# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YVONNE TAYLOR, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 09-377 |
| | ) | |
| v. | ) | Magistrate Judge Bissoon[1] |
| | ) | |
| PITTSBURGH MERCY HEALTH | ) | |
| SYSTEM, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Counsel for the parties shall appear before the undersigned for a status conference to discuss the issues identified below.

Plaintiffs have brought this proposed collective/class action alleging, among other things, that Defendants have violated provisions of the Fair Labor Standards Act ("FLSA"). *See generally* Compl. (Doc. 1). Plaintiffs have filed a Motion seeking expedited notification of potentially affected employees so that they may timely "opt in" to the putative collective action. *See generally* Mot. (Doc. 3).

Much of Defendants' response in opposition addresses the speed and urgency with which Plaintiffs have sought conditional certification and Court-facilitated notice. *See generally* Defs.' Opp'n Br. (Doc. 32) at 1-10 (arguing that Plaintiffs' request for notice is "premature"; that the expedited nature of Plaintiffs' request is inappropriate; that Defendants first should be permitted to seek dismissal of certain claims under Rule 12(b)(6); and that no harm will result from delaying adjudication of conditional certification). Although Defendants also oppose the

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. *See* Consent forms (Docs. 30 & 31).

notification request on its merits, *see id.* at 10-21, Defendants' "timing" issues present threshold inquiries.

As Defendants undoubtedly are aware, "time [is] of the essence" for the purposes of FLSA notice "[b]ecause the . . . statute of limitations is not tolled [until] a potential plaintiff opts in[to]" the proposed collective action. Ruggles v. WellPoint, Inc., 591 F. Supp.2d 150, 162 n.12 (N.D.N.Y. 2008); *accord* Pontius v. Delta Fin. Corp., 2005 WL 6103189, *4 (W.D. Pa. Jul. 22, 2005) (Lancaster, J.) (under FLSA, "the statute of limitations is not tolled" and "valid damages claims, if any, are . . . lost or reduced" over time) (citation in footnote omitted). Although Defendants have compiled an impressive list of cases in which conditional certification was addressed at later stages in the litigation, neither their briefing nor the Court's independent research has identified legal standards governing when FLSA notice can or should first be addressed.

In the absence of such authority, the Court, on its own, must strike a balance between the putative collective action members' interest in asserting timely claims and Defendants' interest in fully and fairly contesting this litigation. The logical starting point is Defendants' stated intention to seek dismissal of certain claims under Rule 12(b)(6).

Defendants identify four potential grounds for dismissal:
1. lack of specificity as to Plaintiffs' claims;
2. ambiguity as to the identity of Defendants;
3. Plaintiffs' failure to state a claim for "estoppel"; and
4. Plaintiffs' failure to state a claim under RICO.

Defs.' Opp'n Br. at 7.

Although Defendants have not yet enjoyed an opportunity to fully address these issues, none of them causes the Court to suspect that Defendants seek, or will secure, a full and final dismissal of Plaintiffs' FLSA claims. The RICO and "estoppel" claims aside, Plaintiffs' current FLSA averments appear to easily satisfy the notice pleading standards and seem likely to survive a specificity challenge. As for the RICO and estoppel claims, they in no way are implicated by Plaintiffs' request for the issuance of FLSA notice.

All that remains are questions regarding the identity of Defendants. As Defense counsel notes, paragraphs 15 and 16 of the Complaint list "health care facilities and centers" of the named Defendants and "affiliated health care facilities and centers," and paragraph 17 purports to identify these facilities, along with the named Defendants, as "Defendants." *See* Compl. at ¶¶ 15-16. At this juncture, the Court has no concrete basis to conclude that the list of actual Defendants extends beyond those identified in the caption and in paragraph 14 of the Complaint. *See id.* To the extent Plaintiffs hold a contrary view, they should be prepared to discuss it at the conference scheduled herein.

Aside from Defendants' anticipated motion to dismiss, their counsel have offered no meaningful explanation for why conditional certification should be delayed. On the other side of the equation, though, Defendants question the actual urgency with which Plaintiffs have approached this litigation:

> As evidenced by when the consents [to opt in] filed in this action were signed, [P]laintiffs' counsel has had these claims in their hands for nine months. Of the 138 consent forms filed to date, at least 36 were signed eight months before, and at least 124 three months before, the lawsuit was commenced. Plaintiffs have voluntarily imposed delay in filing this action, so they cannot claim unfair prejudice from not receiving expedited notice.

3

> In fact, [P]laintiffs' counsel have been in contact with putative class members for almost a year, soliciting individuals to join the litigation. Plaintiffs have published press releases about the case, held a televised press conference . . . on April 1, 2009, set up a website for potential class members . . ., and contacted potential class members, advising of potential claims against the Pittsburgh Mercy Health System and others.
>
> [Plaintiffs'] assertion that[,] in the absence of immediate, [C]ourt-facilitated notice, putative class members will be unfairly prejudiced is belied by the fact that their counsel has been sending notices and has been in contact with putative class members for almost a year. In light of these solicitation efforts, [P]laintiffs cannot claim harm from not receiving expedited notice, and their motion is revealed for what it is – . . . a fast-track effort to [obtain] conditional class certification before . . . Defendants or the Court have any real opportunity to consider and address the many issues that will directly affect whether and what type of notice is permitted.

Defs.' Opp'n Br. at 8-9.

Assuming these assertions are true, the Court is not now prepared to opine on the degree to which they impact the legislative and jurisprudential interests in protecting putative collective action members from losing their claims to the statute of limitations. Nevertheless, the Court cannot rule out the potential impact of Defendants' assertions, and Plaintiffs' counsel should be called upon to respond.

In weighing the conflicting interests identified above, the Court also must consider a mechanism through which all parties may be protected: the tolling of putative members' statute of limitations. Defense counsel has cited one decision, Rubery v. Buth-Na-Bodhaige, Inc., as an example of a case in which the court granted "expedited" notice more than "*four years* after the complaint was filed." *See* Defs.' Opp'n Br. at 6 (emphasis in original) (citing Rubery, 569 F. Supp. 2d 334 (W.D.N.Y. Aug. 8, 2008)). Any "expeditiousness" in that case is explained by those litigants having "recently canceled" a "tolling agreement" entered between them.

4

*See* Rubery at 338-39.  Should the parties here stipulate to a similar agreement, Defendants may pursue their anticipated Rule 12(b)(6) motion (and file a responsive pleading) while at the same time preserving the rights of putative collective action members.

Even if the parties cannot reach such an agreement, one of the other cases cited by Defendants demonstrates that the Court itself may impose equitable tolling.  *See* Stickle v. SCIWestern Market Support Ctr., L.P., 2008 WL 4446539, *22 (D. Ariz. Sept. 30, 2008) ("[c]ourts [may] equitably toll[] the statute of limitations in a[n] FLSA action when doing so is in the interest of justice") (citations omitted); *see also* Defs.' Opp'n Br. at 8 (citing and relying on Stickle as "a similar case, involving the same [P]laintiffs' counsel").  The Stickle court found equitable tolling appropriate because:  "defendant[s] [were] fully aware of [the] scope of potential liability on the date the suit was filed"; absent tolling, "the statute of limitations could act to deprive consenting employees of their right of action"; the court had made no determination regarding the plaintiffs' collective action notification given the pendency of defendants' motions to dismiss; and because "the inherent benefits of the collective action" are eviscerated "if plaintiffs are not notified of the suit before their . . . limitations [period] expires." *Id.*  Most, if not all, of these observations apply here with equal force.

To be sure, one of the factors relevant to equitable tolling is Plaintiffs' degree of diligence -- an issue already challenged by Defendants.  *Compare* Faison v. Texas EZPawn, L.P., 2007 WL 1481047, *1 (S.D. Tex. May 21, 2007) (holding same) *with* discussion *supra*.  The ultimate question, however, is whether a grant of equitable tolling would be "in the interest[s] of justice," and there are other factors supporting its application in this case.

As referenced above, the Court currently has little reason to believe that Defendants' anticipated Rule 12(b)(6) motion (the only articulable basis for delaying conditional

5

certification) will result in a full dismissal of Plaintiffs' FLSA claims. Under the circumstances, the "narrowing [of] issues" contemplated by Defendants (*see* Defs.' Opp'n Br. at 10) would not appear to outweigh the interest in timely preserving claims of putative collective action members.

Another factor is the time it will take for Defendants to file their motion to dismiss; for Plaintiffs to respond; and for the Court to issue a reasoned decision and address potential requests for amendment. While these considerations arguably may apply in any FLSA collective action, the Court is disinclined here to allow non-FLSA related, tangentially related, or curable deficiencies to cause the lapse of potential FLSA claims while Defendants' requests for dismissal run their course through the adjudicative process.

Finally, the Court notes that one of the named Defendants in this case, The Mercy Hospital of Pittsburgh, also is named as a defendant in the related case, <u>Camesi v. University of Pittsburgh Medical Center</u>, Civil Action No. 09-85J (W.D. Pa. 2009), and said Defendant has immediately resisted on the merits Plaintiffs' expedited request for conditional certification. *See generally* Doc. 93 in Civ. Action No. 09-85J. Although fairness precludes the Court from attaching much weight to this factor, at a minimum, it does demonstrate that adjudicating the request for conditional certification and notice in the first instance is not beyond the pale of measured judicial process.

For all of these reasons, counsel shall appear before the undersigned for a status conference to address how this litigation should proceed. As referenced above, the parties shall be prepared to discuss: whether they have or can enter into a "tolling agreement" covering the time it takes to adjudicate Defendants' anticipated motion to dismiss; any proposed curative amendments; and/or the period for Defendants' responsive pleading. Otherwise, counsel will

6

have an opportunity at the conference to state their positions regarding the judicial invocation of equitable tolling, and the Court then will issue its ruling.

In addition, the parties shall confer in advance of the conference to discuss any ambiguities regarding which entities are, or are meant to be, named Defendants in this case.[2] Defendants also should apprise Plaintiffs of the lack of specificity they perceive in the Complaint, and the parties shall determine whether a request for dismissal can be avoided through curative amendment.

Finally, Plaintiffs should be prepared to state their position regarding the proposed subclasses identified in their Complaint. In both this action and the related case at Civil Action No. 09-85J, Plaintiffs' notice request has focused exclusively on Defendants' purported "Meal Break" policy and others directly related thereto. *See* Pls.' Br. (Doc. 4) at 33-34 (requesting issuance of notice to employees "whose pay was subject to an automatic [meal break] deduction even when employees performed compensable work"); Doc. 5 in Civ. Action No. 09-85J at 39 (stating identical request). In both Complaints, however, Plaintiffs also make reference to Defendants' purported "Unpaid Preliminary and Postliminary Work Policy" and "Unpaid Training Policy." *See* Compl. in 09-377 at ¶¶ 94-97, 98-102 *and* Compl. in 09-85J at ¶¶ 106-109, 110-13; *cf. also* Compl. in 09-377 at ¶¶ 103-110 (alleging other unrelated violations of FLSA).

As Defense counsel highlights, Plaintiffs have offered no explanation of whether, and when, these allegations will be addressed for the purposes of notice and otherwise. *See generally* Defs.' Opp'n Br. at 9 ("[u]nless plaintiffs will concede that claims based on the alleged 'Meal

---

[2] As appropriate, Plaintiffs also should be prepared to explain why The Mercy Hospital of Pittsburgh can and/or should be a Defendant in both this and the related FMLA collective action filed at Civil Action No. 09-85J.

7

Break Deduction Policy' are the only ones requiring notice," Defendants and Court cannot rule out possibility that "later Court-facilitated notice(s) will be requested"); *see also generally* affirmations attached to Mots. for Expedited Notice in 09-377 & 09-85J (making no reference to FLSA violations unrelated to meal breaks). The Court also submits that, if the crux of this case is what it appears to be (*i.e.*, employee meal breaks), Plaintiffs' additional claims seem more akin to the type of "fishing expedition" commonly disfavored in the law. *Cf. generally* Rappaport v. Embarq Mgmt. Co., 2007 WL 4482581, *5 (M.D. Fla. Dec. 18, 2007) (for purposes of FLSA notice, "[e]mployers should not be unduly burdened by . . . frivolous fishing expedition[s] conducted by the plaintiff at the employer's expense[]") (citation to quoted source omitted).

Having been placed on notice of this issue, Plaintiffs must be prepared to define the scope of FLSA relief they intend to seek through the collective action vehicle and how they intend to pursue it. It also remains Defendants' prerogative to object to later requests for notice and/or attempts to press subsidiary theories based on the delay resulting from Plaintiffs' chosen litigation strategies. And while Plaintiffs obviously are the masters of their own case, counsel should consider the potential dilutive effect and distraction that may result from a continued pursuit of tangential theories under the FLSA.

Consistent with the foregoing, counsel for the parties shall appear in the undersigned's Chambers **at 10:00 a.m. on May 22, 2009** for a status conference to discuss how this case shall proceed.

IT IS SO ORDERED.

May 11, 2009
s/Cathy Bissoon
Cathy Bissoon
United States Magistrate Judge

cc (via email):

J. Nelson Thomas, Esq.
Justin M. Cordello, Esq.
Brian D. Balonick, Esq.
Gregory A. Miller, Esq.
James F. Glunt, Esq.
Mark R. Hornak, Esq.
Terrence H. Murphy, Esq.