IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YVONNE TAYLOR, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 09-377 |
| ) | |
| v. ) | Magistrate Judge Bissoon |
| ) | |
| PITTSBURGH MERCY HEALTH ) | |
| SYSTEM, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiffs' Motions for Approval of Notice (Doc. 81) and for Clarification (Doc. 84) will be granted, consistent with the discussions below; and Defendants' Motion for a Protective Order (Doc. 87) will be denied without prejudice.

**A.**     **Court Approval of Notice and Issuance Thereof**

The parties' filings reveal agreement on all aspects of the proposed notice, save a clause in the "consent form." *Compare* Pls.' Br. (Doc. 82) at 1-3 *with* Defs.' Br. (Doc. 88) at 2-3. Defendants' proposal, adopted by Chief Judge Ambrose in Kuznyetsov v. West Penn Allegh. Health Sys., Inc., Civil Action No. 09-379 (W.D. Pa.), "specifically tailor[s] the language to include a consent to join in the only claim that has been conditionally certified," *i.e.*, meal break deductions. *See* Order dated July 15, 2009 in 09-379 (Doc. 115) at 6. The Court agrees with Judge Ambrose that the language is appropriate, and the relevant provisions of the consent form shall read:

> I understand that this lawsuit is brought under the Fair Labor
> Standards Act, as amended, 29 U.S.C. §§ 201-209, and I hereby
> consent, agree and opt-in to the above-captioned lawsuit that has
> been filed seeking payment of overtime compensation resulting
> from missed meal breaks.

The parties' joint, proposed notice form, as clarified above, is hereby APPROVED and ADOPTED by the Court. Whether the Notice Form is mailed over one or several days, Plaintiffs' counsel shall, for each mailing, ensure that the "postmarked by" provisions in Section 6 reflect the date of mailing, plus sixty days.

### B. Plaintiffs' Motion for Clarification, and Defendants' Motion for Protective Order, Regarding Communications with Putative Collective Action Members

Plaintiffs ask that the Court's August 12th directive, requiring them to refrain from utilizing Defendants' employee information for any purpose other than preparing for the issuance of notice, be deemed to have expired upon the Court's approval of notice. *See* Pls.' Br. (Doc. 85) at 13. In support of this request, Plaintiffs' counsel have represented, subject to the mandates of Federal Rule 11(b), that:

- Plaintiffs' counsel will not engage in private communications designed to mimic the Court-authorized notice or to represent that their communications have been authorized by the Court.

- Plaintiffs' counsel will not engage in private communications that conflict with the Court-authorized notice.

- Plaintiffs' counsel will not initiate telephone or in-person contacts with prospective collective action members for the purpose of soliciting them to join this lawsuit.

- Plaintiffs' counsel will refrain from communications that coerce prospective collective action members into including themselves in the litigation.

- Plaintiffs' counsel will refrain from communications that contain false, misleading or confusing statements.

- Plaintiffs' counsel otherwise will comply with all applicable ethical rules.

*See* Pls.' Br. (Doc. 85) at 10, 12.

Given Plaintiffs' understanding that their counsel will not initiate telephone or in-person contacts with prospective collective action members,[1] the only issue that remains is potential mailings. In a supporting affidavit, Plaintiffs' counsel explains that "the decision to undertake additional mailings is a fluid process in reaction to the events following issuance of the [C]ourt-approved notice." *See* Doc. 86 at ¶ 9. Counsel's non-exhaustive list of potential contacts includes:

- Mailing a confidential survey to a random sampling to help inform Plaintiffs of the extent of the violations;

- Contacting by mail employees who contacted Plaintiffs' counsel without leaving their own contact information;

- Contacting fact witnesses by mail;

- Reminding employees of the opt-in deadline by mail;

- Mailing information about the case consistent with the Court-approved notice; and

- Confirming that putative plaintiffs have received the Court notice (this may include a mailing to a limited number of individuals to make a statistical analysis).

*Id.* at ¶ 5.

Defendants, on the other hand, ask the Court to impose highly circumscribed restrictions on Plaintiffs' potential communications. *See, e.g.,* proposed order attached to Doc. 87

---

[1] Although Plaintiffs' counsel represent that they will not telephone putative collective action members "for the purpose of soliciting them to join this lawsuit," standing Orders of Court prohibit counsel from initiating such contacts for any reason. *See* Aug. 12th Order at 2.

(use of employee information should be limited to "send[ing] to the putative plaintiffs, one time, by first class mail . . . only[,] the Court-approved notice, consent form, and information sheet," with no "reminders or follow-up notices," and no "contact with the putative plaintiffs in any way other than the one-time mailing"; Plaintiffs should "not hold any press conferences, issue press releases, or otherwise attempt to indirectly contact the putative plaintiffs"; and they should "remov[e] from Plaintiffs' counsel's webpage references to this case, the UPMC case and the West Penn case until the notice period expires").

As previously indicated, courts approach blanket protective orders like the one requested by Defendants with trepidation. *See generally* Aug. 12th Order (Doc. 78) at 2-4.  Any restrictions on Plaintiffs' counsel must be "carefully drawn" to "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 2 (citation to quoted source omitted).  Before entering a protective order, the Court must find "a likelihood of serious abuses," "based on a clear record and specific findings that reflect a weighing of the need[s] for [and against] a limitation." *Id.* at 3.

In attempting to meet their burden, Defendants highlight the website of Plaintiffs' counsel, which includes "links" to local media reports regarding this and the related actions. *See* Defs.' Br. (Doc. 88) at 5-6.  Although Defendants contend that the articles contain false and misleading statements, it remains unclear whether much of the purportedly objectionable content is attributable to the author, as opposed to Plaintiffs' counsel. *Compare, e.g.*, Defs.' Br. at 6 (highlighting July 9, 2009 article stating: "Health Care workers [are] being asked to join [a] lawsuit," and "letters are being sent out to convince local health care workers to be part of a class action [sic] lawsuit") *with* article (filed under Doc. 88-6 at pg. 4 of 12) (failing to attribute these statements to Plaintiffs' counsel); *compare also, e.g.*, Defs.' Br. at 6 (in addition to discussing

4

meal break deductions, July 10, 2009 article "refers to training sessions and work performed before and after [employees'] shifts") *with* article (filed under Doc. 88-6 at pg. 2 of 12) (attributing this statement to "[t]he lawsuit").

To the extent that the articles accurately quote the statements of Plaintiffs' counsel, the Court does not find counsel's statements sufficiently misleading to reflect a "likelihood of serious abuse[]." *Compare* discussion *supra with, e.g.*, article filed under Doc. 88-6 at pg. 4 of 12 (quoting Plaintiffs' counsel as saying, "participation is not automatic," and if recipients "do not return [consent forms] in 60 days, they risk not being able to recover in these lawsuits") (emphasis added) *and* article filed under Doc. 88-6 at pg. 5 of 12 ("[C]hecks go out and people call [who] are very upset because three or four of their co-workers are collecting all of this money, and they didn't receive anything.  And they are upset because they didn't fill [out] the paperwork. . . .  [W]e want to do everything we can on the front end to make sure if they want to get a recovery, now is the time to participate.").[2]

It also is important to note that:  the articles of which Defendants complain are accessible not only on Plaintiffs' counsel's website, but also on the web pages of the media sources that issued them; and, in most instances, Defendants were invited to, and did, tell their sides of the story.  *See, e.g.*, article filed under Doc. 88-6 at pgs. 5-6 of 12 (UPMC's states that it "regularly and routinely pays employees working through a meal break," "employees who follow the guidelines are fully and completely compensated," and "UPMC said in a news release that

---

[2] Presumably, Defendants object to this quotation because Plaintiffs' counsel did not make clear that putative collective action members may decline to opt in and bring claims individually. A reader reasonably may infer, however, that Plaintiffs' counsel was merely indicating that, if putative members wish to join the collective action, they should do so promptly.  *See* Doc. 88-6 at pg. 5 of 12) ("[e]ligible employees will receive a notice in the mail explaining their options") (emphasis added).  In any event, counsel's statements are not sufficiently misleading to warrant the blanket protective order requested by Defendants.

5

similar past cases handled by the same attorneys have yielded as little as $250 after legal fees for affected employees").

In sum, none of Defendants' complaints regarding the press are sufficient to establish serious abuses based on a clear record.

Defendants also object generally to Plaintiffs' counsel's website, including its "non-approved consent form," and other "improper and misleading information."  *See* Defs.' Br. (Doc. 88) at 8.  To this point, the website appears to be a somewhat secondary matter, given that none of Plaintiffs' proposed uses of Defendants' employee information make reference to the same.

Should Defendants choose to pursue Plaintiffs' website, the Court cannot rule on its content in a vacuum.  As indicated in a prior filing, Plaintiffs have retained an expert who has opined that counsel's website and related materials are fully compliant with all applicable ethical rules.  *See* Doc. 55 at 17 (Professor Geoffrey C. Hazard, Jr., "a Trustee Professor of Law at the University of Pennsylvania Law School and Miller Professor of Law at the University of California's Hastings College of Law, as well as a nationally renowned expert on ethics and attorney advertising for the State of Pennsylvania," has "specifically opined that the website . . . complie[s] with the Pennsylvania Rules of Professional Conduct, including Rule 7.2, which provides in pertinent part that the advertisement must be truthful").  Only after an evidentiary hearing, at which time the parties may enjoy a full opportunity to be heard, will the undersigned be in a position to rule on Defendants' remaining objections.[3]  The Court hastens to add, though, that any such evidentiary hearing will not delay the timely issuance of Court-approved notice.

---

[3] Ruggles v. WellPoint, Inc., 591 F. Supp.2d 150 (N.D.N.Y. 2008), cited by Defendants, is distinguishable.  There, the district court imposed substantial limitations on plaintiffs' communications based on "a litany of abuses and misleading statements in [p]laintiffs'

For these reasons, Defendants have failed to demonstrate their entitlement to a blanket protective order. Given the relatively considerable latitude afforded to Plaintiffs, however, the Court does think it appropriate for their counsel to identify any contemplated additional mailings before they are sent. Although the Ruggles decision is distinguishable on its facts, the undersigned generally agrees that "the court-controlled mechanism should trump . . . attorney driven" modes of communication after conditional certification. *Cf. id.* at 164. Plaintiffs' counsel do not necessarily disagree. *See* Doc. 86 at ¶ 6 (counsel "may [elect to] make no [additional] contact whatsoever"). Given the uncertainties that lie ahead, Plaintiffs' counsel understandably will not voluntarily cede the possibility of additional mailings given their duty to zealously represent the legal interests of the putative collective action. *See id.* at ¶ 4.

Nevertheless, the undersigned remains convinced that transparency is essential to the Court's "fulfillment of its duty . . . to exercise control over [this collective] action and to enter appropriate orders governing the conduct of counsel and [the] parties." *See* Aug. 12th Order at 6. Absent Court supervision, Plaintiffs' issuance of further mailings may well present a situation in which it is difficult, if not impossible, to "unscramble the egg."

Thus, should Plaintiffs determine that the issuance of additional mailings is necessary, their counsel shall: advise opposing counsel; provide via facsimile a sample copy of the proposed mailing to opposing counsel and the Court; and call opposing counsel and Chambers to schedule a telephone conference so that the Court promptly may consider Plaintiffs' proposed course of action.

---

[c]ounsel's notices to the putative class." *See id.* at 164. No such record has been established here.

Consistent with the foregoing, Plaintiffs' Motions for Approval of Notice (**Doc. 81**) and for Clarification (**Doc. 84**) are **GRANTED** to the extent described above, and Defendants' Motion for a Protective Order (**Doc. 87**) is **DENIED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

August 25, 2009                                             s/Cathy Bissoon
                                                            Cathy Bissoon
                                                            United States Magistrate Judge

cc (via email):

All Counsel of Record